Filed 11/3/25  Okabe v. Mortgage Electronic Registration Systems CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| JIRO OKABE et al., | B323259 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19STCV31337) |
| v. | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael L. Stern, Judge.  Affirmed.

Richard L. Antognini for Plaintiffs and Appellants.

McGuireWoods and Adam F. Summerfield for Defendants and Respondents.

\* \* \* \* \* \* \* \* \* \*

Plaintiffs and appellants Jiro Okabe and Shedell Okabe, homeowners, brought this action for fraud and statutory violations against their mortgage servicer, defendant and respondent Bank of America, N.A. (Bank), and the beneficiary and nominee of the original lender for their mortgage, defendant and respondent Mortgage Electronic Registration Systems, Inc. (Mortgage Systems). Plaintiffs asserted claims of common law fraud and violation of the California Homeowner Bill of Rights, (Homeowner Bill of Rights) (Sen. Bill No. 900 (2011–2012 Reg. Sess.)).

Plaintiffs appeal from the judgment of dismissal entered in defendants' favor after the trial court granted defendants' motion for judgment on the pleadings without leave to amend. We conclude plaintiffs have failed to state a preforeclosure cause of action for dual tracking under the Homeowner Bill of Rights, and they failed to state any theory of common law fraud against either defendant. Plaintiffs have also not affirmatively shown the court abused its discretion in denying leave to amend. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the operative second amended complaint, plaintiffs, who are husband and wife, purchased a single-family condominium in 1995 for use as their residence. In 2006, plaintiffs refinanced their mortgage on the property with NBGI, Inc. (NBGI), a corporation that dissolved in 2013 and is not a party to this action. The refinance loan with NBGI was a "negative amortization" loan consisting of a promissory note secured by a deed of trust. The deed of trust is attached and incorporated into the second amended complaint as exhibit 2.

2

Defendant Mortgage Systems is identified in the deed of trust as the beneficiary acting as the nominee for NBGI and its successors and assigns. The deed of trust also contains the following language: "Borrower understands and agrees that [Mortgage Systems] holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, [Mortgage Systems] (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

By 2018, the monthly payment on plaintiffs' mortgage had increased from $1,877.45 to $2,900.00. Plaintiffs made all payments in a timely manner until January 2019 when they experienced financial difficulties. At that time, plaintiffs contacted defendant Bank to discuss the possibility of a loan modification or forbearance agreement. There are no allegations in the second amended complaint about how or when Bank became involved with plaintiffs' mortgage, except for the general allegation that Bank acts as a mortgage servicer. Bank acknowledged its role as the "mortgage servicer" on plaintiffs' mortgage in the motion for judgment on the pleadings filed in the trial court.

Defendant Bank designated Rosa Gomez to be plaintiffs' "single point of contact" to handle their application for a loan modification. Plaintiffs submitted documentation requested by defendant Bank in order to be considered for assistance to avoid foreclosure. On April 19, 2019, Bank sent plaintiffs a letter acknowledging their application for "home loan assistance" was

"complete as of April 16, 2019." The letter is attached as exhibit 7 to the second amended complaint. In that same letter, Bank advised: "Even though you've provided the items that we originally requested from you, our review indicates that additional information, or corrections and/or clarifications to those items is still needed before we can begin your evaluation." Plaintiffs provided the additional information requested by Bank.

During a phone call in June 2019 with Ms. Gomez, plaintiffs were assured that "everything was fine" and their request for mortgage assistance was "still under review."

On July 13, 2019, defendant Bank acknowledged receipt of the additional information submitted by plaintiffs and notified them that their application was "complete as of July 10, 2019." The letter is attached as exhibit 10 to the second amended complaint and contains the following additional notification to plaintiffs: "As a result you are now entitled to certain foreclosure protections. We're now evaluating your application for loan assistance programs."

Four days later, defendant Bank sent plaintiffs a letter advising them that they did not meet "the eligibility requirements to qualify for a loan modification" but they did qualify to participate in a short sale. The letter is attached as exhibit 11 to the second amended complaint. Among other things, the letter included notice to plaintiffs of their right to request a reevaluation of Bank's decision. When plaintiffs spoke with Ms. Gomez of Bank by phone after receiving the letter, she told them they did not qualify for a loan modification because of their gross monthly income.

Plaintiffs allege that while their application for home loan assistance was pending with defendant Bank, several documents

4

were recorded against their property in a wrongful attempt by defendants to initiate a fraudulent foreclosure proceeding.

On April 29, 2019, defendant Mortgage Systems recorded an assignment of all of its interests in the deed of trust to The Bank of New York Mellon in its capacity as the trustee for the certificate holders of the CWALT, Inc., Alternative Loan Trust 2006-OA21, Mortgage Pass-Through Certificates, series 2006-OA21 (Bank of New York).  Bank of New York is not a party to this action.  The assignment is attached as exhibit 5 to the second amended complaint.

On July 2, 2019, plaintiffs allege defendant Bank "caused the recording and service" of a notice of default against their property "thus violating the anti-dual tracking statutes."  The notice of default is attached as exhibit 9 to the second amended complaint.  It shows that an entity called Clear Recon Corp, which is not a party to this action, recorded the notice of default on behalf of the newly assigned beneficiary, Bank of New York.  The notice of default recites that plaintiffs are in default on their mortgage in the amount of $19,777.87 and it includes a declaration by a Bank employee, dated June 7, 2019, attesting to the fact that plaintiffs had been contacted to assess their financial situation and to discuss options for them to avoid foreclosure.

On September 20, 2019, plaintiffs allege that two more documents were recorded against their property by defendant Bank "[a]s a virtual admission of their prior wrongdoing" in recording a wrongful notice of default while plaintiffs' application for assistance was pending.  The two recorded documents are attached as exhibit 13 to the second amended complaint:  (1) a notice rescinding the notice of default dated July 2, 2019; and

(2) a new notice of default stating that plaintiffs were in arrears on their mortgage in the amount of $29,186.40 as of September 12, 2019. The September notice of default, like the July notice, was recorded by Clear Recon Corp on behalf of the Bank of New York, and included the same declaration from the Bank employee attesting that plaintiffs had been contacted about their options for avoiding foreclosure.

On these allegations, plaintiffs assert three causes of action. The first cause of action is for fraud against defendant Mortgage Systems. Plaintiffs allege Mortgage Systems lacked the authority in 2019 to assign any interest in the deed of trust because its legal authority to act as beneficiary and the nominee of NBGI was extinguished in 2013 with the dissolution of NBGI. Plaintiffs allege "there is no record of any intervening transfers to a successor in interest" to NBGI, plaintiffs believe there are no successors in interest, and the assignment executed by Mortgage Systems vice president Andre Miranda was a sham. Mortgage Systems "intentionally concealed their lack of authority" to take any such acts in 2019, plaintiffs "justifiably relied" on defendants having the requisite authority and ability to process their request for loan modification, and plaintiffs have suffered emotional distress and other damages as a result.

Plaintiffs' second cause of action is pled against defendant Bank and is based on violation of the Homeowner Bill of Rights' dual tracking provisions. (Civ. Code, § 2923.6.) Plaintiffs allege the recording of the July notice of default while their application for assistance was pending with Bank was confusing and caused them distress. Plaintiffs allege Bank failed to consider all appropriate options for plaintiffs, including a forbearance agreement, and misled plaintiffs their application was being

6

properly considered. Plaintiffs "felt they were under siege" and were "deprived" of their right to appeal Bank's decision because they "did not know" they had 30 days to appeal, but rather, believed they had no further recourse in light of the wrongful July default notice.

Plaintiffs' third cause of action, also against defendant Bank, is for intentional misrepresentation. Plaintiffs allege they filed this action on September 4, 2019, and personally served defendant's registered agent on September 16, 2019. Plaintiffs allege that, "as a virtual admission of their prior wrongdoing" and after being on notice of plaintiffs' lawsuit, defendant Bank recorded the notice rescinding the July notice of default and recorded the new notice of default. Defendant Bank intentionally filed the same declaration with the September notice of default knowing it "was not accurate and complete and was not supported by competent and reliable evidence."

Plaintiffs do not allege that defendants have foreclosed on their property. They allege only the recording of a notice of default for which they seek "immediate rescission." They also seek a judicial determination that defendants have no right, title or interest in their property, unspecified damages, and reasonable attorney fees and costs.

Defendants answered the second amended complaint and subsequently filed their motion for judgment on the pleadings. In support of their motion, defendants requested the court take judicial notice of six documents, five of which were documents recorded in the chain of title for the subject property and one a superior court minute order—all of the documents, except for the minute order, were exhibits to the second amended complaint. Plaintiffs opposed the motion, arguing their claims were

adequate as pled and alternatively requesting the opportunity to cure any pleading defects.

On July 7, 2022, the trial court issued its order granting defendants' motion, while taking judicial notice of the documents submitted in support of defendants' motion. The court explained that plaintiffs had failed to plead fraud with specificity and the "judicially noticed documents" demonstrated there had been no dual tracking. The court granted the motion without leave to amend and entered a judgment of dismissal in defendants' favor.

This appeal followed.

## DISCUSSION

### 1.    Applicable law

#### 1.1    Standard of review

A motion for judgment on the pleadings under Code of Civil Procedure section 438 is equivalent to a demurrer. (*Santa Clarita Organization etc. v. County of Los Angeles* (2024) 105 Cal.App.5th 1143, 1154.) We review an order granting a motion for judgment on the pleadings under the same de novo standard applicable to rulings on demurrer. (*Santa Clarita Organization,* at p. 1154 quoting *People ex rel. Harris v. Pac Anchor Transportation, Inc*. (2014) 59 Cal.4th 772, 777.) For the limited purpose of assessing whether the complaint states a legal cause of action, we accept as true all well-pled material facts, but not contentions, deductions or conclusions of fact or law. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc*. (2016) 1 Cal.5th 994, 1010; accord, *Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281, 1291.) We also consider matters which are properly the subject of judicial notice. (*Centinela*, at p. 1010.) In determining whether the operative complaint states a cause of action, " ' "we give the

8

complaint a reasonable interpretation, reading it as a whole and its parts in their context." ' " (*Ibid*.)  We are not concerned with evidentiary matters or the "plaintiff's ability to prove the allegations." (*Erlach*, at p. 1291.)

In assessing whether the denial of leave to amend was an abuse of discretion, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

### 1.2    Nonjudicial foreclosures

California's nonjudicial foreclosure system is governed by a comprehensive statutory scheme.  (Civ. Code, § 2920 et seq.; see also *Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 294.)  The statutory scheme "is designed to provide the lender-beneficiary with an inexpensive and efficient remedy against a defaulting borrower, while protecting the borrower from wrongful loss of the property and ensuring that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 926 (*Yvanova*).)

In 2012, the Legislature passed the Homeowner Bill of Rights, which made various amendments to the statutory scheme.  At the time, California was "still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007." (Stats. 2012, ch. 87, § 1.)  The purpose of the Homeowner Bill of Rights was "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and

have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.  Nothing in the act that added this section, however, shall be interpreted to require a particular result of that process." (Civ. Code, § 2923.4.)  Several provisions of the Homeowner Bill of Rights were set to expire in 2018, but were reenacted, effective January 1, 2019.  (Stats. 2018, ch. 404, § 17.)

A nonjudicial foreclosure is initiated by the recording of a notice of default.  (Civ. Code, § 2924, subd. (a)(1).)  When a borrower defaults, "only the current beneficiary may direct the trustee to undertake the nonjudicial foreclosure process.  '[O]nly the "true owner" or "beneficial holder" of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law.' " (*Yvanova*, *supra*, 62 Cal.4th at pp. 927–928.)

## 2.     The dual tracking claim (Homeowner Bill of Rights)

The Homeowner Bill of Rights prohibits, among other things, "dual track" foreclosures, which occur when a servicer continues foreclosure proceedings while reviewing a homeowner's application for a loan modification.  (Civ. Code, §§ 2923.6, 2924.11.)  Plaintiffs allege defendant Bank violated these provisions.

As relevant here, Civil Code section 2923.6, subdivision (c), prohibits a mortgage servicer like defendant Bank from recording a notice of default or notice of sale or conducting a trustee's sale while a borrower's "complete first lien loan modification application is pending."

In the preforeclosure context, the remedy for violating this dual tracking provision is limited to an injunction preventing the

10

foreclosure action from proceeding.  (*Billesbach v. Specialized Loan Servicing LLC* (2021) 63 Cal.App.5th 830, 845 (*Billesbach*).)  Civil Code section 2924.12, subdivision (a)(1) provides:  "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17."  An injunction granted under section 2924.12, subdivision (a) may remain in place "until the court determines that the mortgage servicer . . .  has corrected and remedied the violation or violations giving rise to the action for injunctive relief.  An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied."  (*Id.*, § 2924.12, subd. (a)(2).)

Damages are recoverable only in the postforeclosure context where a plaintiff shows that a material violation occurred and it was not corrected and remedied prior to recording the trustee's deed upon sale.  (Civ. Code, § 2924.12, subd. (b).)  "Section 2924.12, subdivision (c) encourages mortgage servicers to cure any material violation by providing a safe harbor:  'A mortgage servicer . . . shall not be liable for any violation that it has corrected and remedied prior to the recordation of the [foreclosure sale] . . . .'  [Citation.]  Thus, in the context of damages liability, the material effect of a violation must be measured after the foreclosure sale is recorded.  By the statute's terms, a temporary disruption of the normal foreclosure process that is corrected and causes no lasting harm to the borrower's rights will give rise to no liability."  (*Billesbach, supra,* 63 Cal.App.5th at p. 845.)

Plaintiffs' allegations foreclose any viable preforeclosure dual tracking claim.  Plaintiffs allege defendant Bank caused the

11

first notice of default to be recorded on July 2, 2019, while their loan application was still pending. There are no allegations the foreclosure proceeding moved forward in any way after the recording of the July 2, 2019 notice of default. Rather, plaintiffs allege Bank corresponded with them about their application, including via phone calls with Ms. Gomez, their point of contact, and that their application was formally denied by written letter on July 17, 2019. Plaintiffs then expressly allege the July notice of default was rescinded on September 20, 2019, with a new notice of default recorded the same day. Plaintiffs do not allege that any foreclosure sale has proceeded for the September notice of default, and they expressly concede in their opening brief that no foreclosure sale has occurred.

To the extent plaintiffs alleged a technical violation of the dual tracking provisions in the Homeowner Bill of Rights, their pleading also alleges facts showing the violation was cured and that defendants did not pursue the foreclosure after the July notice of default was recorded. Plaintiffs have not demonstrated what facts can be alleged to state a viable preforeclosure dual tracking claim for injunctive relief. They have not shown the trial court abused its discretion in denying leave to amend. (*Blank*, *supra*, 39 Cal.3d at p. 318.)

### 3. The common law fraud claims

Plaintiffs contend the Homeowner Bill of Rights did not preempt traditional common law remedies and that their fraud theories against defendants Mortgage Systems and Bank are viable as pled. We are not persuaded any viable fraud theory has been stated, nor have plaintiffs affirmatively shown how the claims can be amended.

12

### 3.1 Defendant Mortgage Systems

The elements of common law fraud are misrepresentation (false representation, concealment, or nondisclosure), knowledge of falsity, intent to defraud, justifiable reliance, and resulting damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 (*Lazar*); accord, *Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 43 (*Rattagan*).) It is well-established the elements of fraud "must be pled specifically; general and conclusory allegations do not suffice. . . . 'This particularity requirement necessitates pleading facts which "show how, when, where, to whom, and by what means the representations were tendered." ' " (*Lazar*, at p. 645.) Where, as here, a fraud theory is asserted against a corporate entity, a plaintiff's pleading burden "is even greater. In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' " (*Ibid.*)

The only allegation against defendant Mortgage Systems is that it lacked the legal authority in April 2019 to assign its interests in the deed of trust because its authority was extinguished in 2013 when NBGI was dissolved as a corporate entity. Plaintiffs allege "there is no record of any intervening transfers to a successor in interest" from NBGI prior to the dissolution. Therefore, plaintiffs believe there are no successors in interest, and the assignment executed by Mortgage Systems vice president Andre Miranda was a sham. Plaintiffs allege Mortgage Systems "intentionally concealed" its lack of authority, plaintiffs "justifiably relied" on defendants having the requisite authority to process their request for loan modification, and

13

plaintiffs have suffered emotional distress and other damages as a result.

These minimal, and largely conclusory, allegations are lacking the requisite specificity to state a theory of fraud against a corporate entity. They fail to allege the subject assignment was void as opposed to merely voidable. In addition, plaintiffs' allegations, including the documents attached and incorporated into their pleading, show that their application for loan assistance was made to defendant Bank, the mortgage servicer. There are no allegations defendant Mortgage Systems had anything to do with handling or processing that application which directly contradicts plaintiffs' allegation they justifiably relied on Mortgage Systems' authority to act and "process" their request. There are no other allegations of justifiable reliance.

Plaintiffs cite *Yvanova, supra,* 62 Cal.4th 919 for the proposition that a homeowner has standing to state a cause of action for wrongful foreclosure based on an allegedly void assignment. This is true, but it does not help plaintiffs. Plaintiffs concede that no foreclosure has occurred, and this fact is fatal to their claim. *Yvanova* explained, "[w]e hold only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment. *We do not hold or suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed.* Nor do we hold or suggest that plaintiff in this case has alleged facts showing the assignment is void or that, to the extent she has, she will be able to prove those facts." (*Id.* at p. 924, italics added.)

Second, plaintiffs argue they should be allowed to amend their pleading to add a cause of action seeking injunctive relief against Mortgage Systems for violating Civil Code section 2924.17 of the Homeowner Bill of Rights. Section 2924.17, subdivision (a) provides, in relevant part, that "a notice of default . . . in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence." Section 2924.17 is one of the Homeowner Bill of Rights provisions for which injunctive relief is available under section 2924.12. (*Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 157 [Civ. Code, §§ 2924.12 and 2924.19 are "exclusive means for a borrower to obtain injunctive relief under the [Homeowner Bill of Rights"].)

Plaintiffs contend the notice of default recorded on behalf of the Bank of New York states it is "the present beneficiary" under the deed of trust and entitled to foreclose on the property, but that this statement is demonstrably false because the assignment from defendant Mortgage Systems was void. Plaintiffs state no competent theory as to how this would state a viable claim against defendant Mortgage Systems. Any potential violation of the statute would be by Bank of New York, the entity on whose behalf the default was recorded, and Bank of New York is not a party to this action. The same defect affects plaintiffs' contention it can amend to state causes of action under different consumer protection statutes for wrongful collection of a debt.

### 3.2 Defendant Bank

Plaintiffs' third cause of action for intentional misrepresentation against Bank also fails for lack of specificity.

15

(*Lazar*, *supra*, 12 Cal.4th at pp. 638, 645.)  Plaintiffs' allegations against Bank are based on the allegedly fraudulent nature of the declarations attached to the notices of default recorded on behalf of Bank of New York.  Plaintiffs allege those declarations were "not accurate and complete" as required by Civil Code section 2924.17, subdivision (a).

There are no allegations explaining how those declarations were inaccurate or incomplete.  The declaration is a form declaration signed by a Bank employee attesting to the fact that foreclosure options were discussed with plaintiffs.  Plaintiffs allege that options were discussed with them and that they submitted documentation to be considered for assistance and were ultimately only approved to participate in a short sale.  There are no allegations supporting a theory of fraud based on a statutory violation or otherwise.

Finally, whether plaintiffs may be able to assert a claim for wrongful foreclosure or state any other viable claim for injunctive relief or damages based on the current status of the delinquency on their loan is not before us and we express no opinion on that issue.

4.    **Leave to amend**

At oral argument, as in the opening brief, plaintiffs' counsel focused on his request for leave to amend as to defendant Bank only.  Counsel argued that defendant Bank could be liable as the mortgage servicer because it helped conceal the fact the Bank of New York was not the lawful owner of plaintiffs' loan in light of the allegedly invalid 2019 assignment.

The current pleading states only allegations on information and belief and a legal conclusion the 2019 assignment was void.  Counsel offered no new facts that could be stated in an amended

16

pleading to allege that Bank fraudulently concealed Bank of New York's status from plaintiffs. Counsel also did not identify any new facts that would adequately allege the 2019 assignment to Bank of New York was legally void as opposed to merely voidable. (See, e.g., *Yvanova, supra,* 62 Cal.4th at pp. 930, 935–937 ["a voidable transaction, unlike a void one, is subject to ratification by the parties" to the transaction].)

Further, the Homeowner Bill of Rights provides that a borrower may request "[a] copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose." (Civ. Code, § 2923.55, subd. (b)(1)(B)(iii).) Plaintiffs did not argue they made this request and were denied the right to receive the documentation verifying Bank of New York's current ownership of the loan.

Accordingly, plaintiffs have not affirmatively shown they can plead a statutory claim under either the Civil Code section 1788.17 or under 15 U.S.C. § 1692f(6) of the Federal Debt Collection Practices Act.

For the same reason, plaintiffs also failed to show they can state a common law theory of fraudulent concealment. (*Rattagan, supra,* 17 Cal.5th at p. 43 ["California courts apply the same specificity standard to evaluate the factual underpinnings of a fraudulent concealment claim at the pleading stage, even though the focus of inquiry shifts to the unique elements of the claim"].)

17

## DISPOSITION

The judgment of dismissal entered in favor of defendants and respondents Mortgage Electronic Registration System, Inc. and Bank of America, N.A. is affirmed.

Defendants and respondents shall recover costs of appeal.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


WILEY, J.